UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| **PATRICK GILTON #2006030775** | **CASE NO. 6:19-CV-00441 SEC P** |
| **VERSUS** | **JUDGE SUMMERHAYS** |
| **PAUL SCOTT ET AL** | **MAGISTRATE JUDGE WHITEHURST** |

### REPORT AND RECOMMENDATION

Before this Court are the original and amended complaints [rec. docs. 1, 7, 15] filed by pro se plaintiff Patrick Gilton. He is incarcerated at the St. Mary Parish Jail (SMPJ) in Centerville, Louisiana, and complains of the conditions of confinement at that facility, as well as denied or delayed medical care. Plaintiff has named as defendants SMPJ Warden Paul Scott, SMPJ Assistant Warden Bruce Cliffton, Quality Healthcare Corrections, Dentist Quality Healthcare Corrections and Dr. Dustin.

This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the Court. For the following reasons it is recommended that the complaint be **DISMISSED WITH PREJUDICE** as frivolous and for failing to state a claim for which relief may be granted.

## I. Background

### a. Procedural Background

Pro se plaintiff Patrick Gilton, proceeding *in forma pauperis*, filed the instant civil rights complaint pursuant to 42 U.S.C. § 1983 on April 5, 2019, in the Southern District of Iowa. [Rec. Doc. 1] An Order transferring the matter to this Court was signed on that same date. [Rec. Doc. 3] Plaintiff filed his first amended complaint in this Court on April 22, 2019. [Rec. Doc. 6]

On May 14, 2019, following an initial review of his complaint, the undersigned ordered plaintiff to amend to provide additional information regarding his claims. [Rec. Doc. 12] Plaintiff did so, filing a second amended complaint on August 27, 2019. [Rec. Doc. 15]

### b. Factual Background

Plaintiff makes numerous allegations regarding the conditions of his confinement at SMPJ. He alleges that the dorms are full of spider webs, and there is black mold in the showers and sinks. He complains that there are no exit signs on the doors or blueprints of the prison posted in case of a fire.

He further alleges that the urinals are backed up with feces and urine for days and that prisoners are exposed to communicable diseases, including staph infections, AIDS, boils, pink eye from incoming inmates who are coming in "directly from the streets," and not being checked by the medical staff to be "cleared."

In addition, he seeks to be compensated for inadequate dental care regarding a toothache, and inadequate medical care after a fall on an uncovered drain in the bathroom.

## II. Law and Analysis

### a. Frivolity Review

Gilton has been granted leave to proceed *in forma pauperis* in this matter. Accordingly, his complaint is subject to screening under 28 U.S.C. § 1915(e)(2), which provides for *sua sponte* dismissal of the complaint or any portion thereof if the court determines that it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B)(i)–(iii).

A complaint is frivolous if it lacks an arguable basis in law or fact. *Gonzalez v. Wyatt*, 157 F.3d 1016, 1019 (5th Cir. 1998). A complaint fails to state a claim upon which relief may be granted if it is clear the plaintiff cannot prove any set of facts in support of his claim that would entitle him to relief. *Doe v. Dallas Indep. Sch. Dist.*, 153 F.3d 211, 215 (5th Cir. 1998). When determining whether a complaint is frivolous or fails to state a claim upon which relief may be granted, the court must accept the plaintiff's allegations as true. *Horton v. Cockrell*, 70 F.3d 397, 400 (5th Cir. 1995) (frivolity); *Bradley v. Puckett*, 157 F.3d at 1025 (failure to state a claim).

### b. Conditions of Confinement

Plaintiff has alleged a constitutional violation resulting from the conditions at SMPJ. First, his complaint that the dorms are full of spider webs is without merit, as the mere presence of spiders or similar pests does not rise to the level of a constitutional violation. *Simmons v. Gusman*, 2016 U.S. Dist. LEXIS 48421 (E.D. La. 2016).

Further, he complains that the showers are full of mildew and black mold, the urinals are backed up with feces and urine, and the facility is not thoroughly cleaned. With respect to the cleanliness of the prison dorms and bathrooms, courts have held that clearly, there is a point beyond which a prison's conditions are so excessively dirty or unkempt as to render them unconstitutional. *See, e.g., Gates v. Cook*, 376 F.3d 323, 338 (5th Cir. 2004) (confinement in "'extremely filthy' [cells] with crusted fecal matter, urine, dried ejaculate, peeling and chipping paint, and old food particles on the walls" was unconstitutional). That said, it must be remembered that, although prisons should be reasonably clean, "[t]he Constitution does not require that prisons be completely sanitized or as clean or free from potential hazards as one's home might be." *McAllister v. Strain*, Civ. Action No. 09-2823, 2009 U.S. Dist. LEXIS 120101, 2009 WL 5178316, at *3 (E.D. La. Dec. 23, 2009); accord *Talib v. Gilley,* 138 F.3d 211, 215 (5th Cir. 1998) ("[T]he Constitution does not mandate prisons

with comfortable surroundings or commodious conditions."). Plaintiff has failed to allege conditions so extreme so as to render them unconstitutional.

Moreover, the jurisprudence has repeatedly held that the presence of mold and dampness in a prison setting does not render an inmate's confinement unconstitutional. *Green*, supra (citing *Eaton v. Magee*, No. 10-112, 2012 U.S. Dist. LEXIS 88844, 2012 WL 2459398, at *5 (S.D. Miss. Jun. 27, 2012) ("Plaintiff's claim that the bathroom and shower area are unsanitary and contain black mold fails to rise to the level of a constitutional violation."); *Barnett v. Shaw*, No. 11-0399, 2011 U.S. Dist. LEXIS 63404, 2011 WL 2200610, at *2 (N.D. Tex. May 18, 2011) (allegation of "excessive amount of black mold in the showers and sinks" was insufficient to raise a claim for constitutional violation), adopted, 2011 U.S. Dist. LEXIS 61100, 2011 WL 2214383, at *1 (N.D. Tex. Jun. 7, 2011); *Reynolds v. Newcomer*, No. 09-1077, 2010 U.S. Dist. LEXIS 3901, 2010 WL 234896, at *10 (W.D. La. Jan. 19, 2010) (complaints of "the presence of black mold in living areas, eating areas, and shower areas" were found to "rise to no more than a de minimis level of imposition with which the Constitution is not concerned.") Thus, Gilton's allegations regarding mold fail to establish constitutional violations.

Plaintiff goes on to complain that prisoners are exposed communicable diseases from "incoming inmates." To the extent that he is complaining that new inmates are not routinely tested for infectious diseases, no such screening of all

5

inmates is constitutionally required. *Morris v. Gusman*, 2010 U.S. Dist. LEXIS 15275 (E.D. La. 2010); *see also Gibbs v. Grimmette*, 254 F.3d 545, 550 (5th Cir. 2001).

Finally, with respect to plaintiff's complaint that prisoners are not given a blueprint of the jail or made aware of exit doors in dorms, he fails to state a constitutional violation. "Prison administrators . . . should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Whitley v. Albers*, 475 U.S. 312, 321-22 (1986) (quoting *Bell v. Wolfish,* 441 U.S. 520, 547 (1979)). See *McCord v. Maggio*, 910 F.2d 1248, 1251 (5th Cir. 1990) ("Prison officials should be accorded the widest possible deference in the application of policies and practices designed to maintain security and preserve internal order."). There is obviously a rational correlation between SMPJ's goal of maintaining security and a policy to not provide inmates with a blueprint or map of the layout of the facilities.

### c. Medical Care

In addition to complaints regarding the conditions of his confinement, Gilton alleges that he received inadequate medical care with respect to an ankle/foot injury he received when he stepped on an uncovered drain, as well as a toothache.

As a pretrial detainee, Plaintiff's constitutional rights flow from the Fourteenth Amendment Due Process Clause rather than the Eighth Amendment prohibition against cruel and unusual punishment. Because they have not yet been convicted of the crime with which they are charged, pretrial detainees have a due process right not to be punished for that crime. *Bell v. Wolfish*, 441 U.S. 520, 535 (1979). The standard to apply in analyzing a denial of medical care claim asserted by a pretrial detainee depends upon whether the claim is directed to a "condition of confinement" or to an "episodic act or omission." *Scott v. Moore*, 114 F.3d 51, 53 (5th Cir. 1997), *quoting Hare v. City of Corinth*, 74 F.3d 633, 644 (5th Cir. 1996). Plaintiff's complaint is directed to episodic acts or omissions. Under the "episodic act" standard, "a state official's episodic act or omission violates a pretrial detainee's due process right to medical care if the official acts with subjective deliberate indifference to the detainee's rights." Thus, the plaintiff must show both that he suffered a sufficiently serious deprivation and that this deprivation was brought about by the deliberate indifference of prison officials. *Hare*, 74 F.3d at 643 and 650.

This is the same standard applicable to convicted prisoners whose claims are analyzed under the Eighth Amendment. In order to prevail on such claims, convicts must establish that the delay in providing medical care was "sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429

U.S. 97 (1976). A showing of deliberate indifference with regard to medical treatment requires the inmate to submit evidence that prison officials "'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.'" *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir.2001) (citation omitted).

Plaintiff has made no such showing.

Plaintiff states that after he fell on April 8, 2019, he was seen by a Captain, who called the nurse's station, got him a wheelchair, and took him to the nurse's station. The nurse then photographed his foot and texted a picture of it to Dr. Dustin, a physician who works for St. Mary Parish. [Rec. Doc. 7-1, p. 2-3] Dr. Dustin prescribed medication. The response to his inmate grievance form dated April 8, 2019, states that he was "checked and no swelling, fracture or dislocation noted." [Doc. 15-1, p. 3]

He also complains of a toothache. He alleges that he has not seen a doctor for his tooth, which is causing pain so severe that he cannot eat. [Rec. Doc. 7-1, p. 8] However, per the inmate grievance submitted by Plaintiff on February 19, 2019, he saw a nurse on February 11, 2019, and a dentist on February 21, 2019. [Rec. Doc. 7-1, p. 1]

It appears that plaintiff simply disagrees with the treatment decisions of the health care professionals who were responsible for his care and treatment. Plaintiff admits that he was examined by a nurse immediately after his fall, who consulted a doctor, and promptly dispensed medication, and the inmate grievance form evidences that he was seen by a nurse and a dentist regarding his tooth. Plaintiff disagrees with the conclusions and treatment options offered by the nurse and doctors; however, his disagreement with the health care professional's diagnosis or treatment choices falls far short of establishing deliberate indifference since mere disagreement with medical diagnosis or treatment does not state a claim under the Eighth Amendment. *See Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir.1997), citing *Young v. Gray*, 560 F.2d 201, 201 (5th Cir.1977); *Spears v. McCotter*, 766 F.2d 179, 181 (5th Cir.1985).

Therefore,

**IT IS RECOMMENDED** that this complaint be **DISMISSED WITH PREJUDICE** for failure as frivolous.

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days

after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.** *See, Douglass v. United*

THUS DONE in Chambers on this 21st day of November, 2019.

CAROL B. WHITEHURST
UNITED STATES MAGISTRATE JUDGE